BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

CHARLES E.T. ROBERTS
  (PA Bar No. 326539)
Counsel to the Assistant Attorney General
U.S. Department of Justice
Civil Division
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 305-1141
Charles.Roberts2@usdoj.gov

*Counsel for the United States*

STANLEY E. WOODWARD, JR.
Associate Attorney General

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

JOHN K. ADAMS
Senior Counsel

DAVIS FORSYTHE
Senior Counsel
U.S. Department of Justice
Environment and Natural Resources Division

CRAIG H. MISSAKIAN
United States Attorney

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br>   v.<br><br>CITY OF MORGAN HILL, CITY OF PETALUMA,<br><br>          Defendants. | No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

### PRELIMINARY STATEMENT

1.    From the day President Trump took office, his Administration has prioritized cutting energy costs for all Americans, restoring consumer freedom, and unleashing American energy dominance. *Unleashing American Energy*, 90 Fed. Reg. 8,353 (Jan. 20, 2025) (Executive Order 14154). Ensuring that all Americans have reliable access to affordable energy not only makes good economic sense, it also strengthens national security.

2.    Sadly standing in the way of that progress, many states and localities have enacted "energy policies that threaten American energy dominance and our economic and national security." *Protecting American Energy from State Overreach*, 90 Fed. Reg. 15,513 (Apr. 8, 2025) (Executive Order 14260). Recognizing that these radical measures, "weaken our national security and devastate Americans by driving up energy costs for families coast-to-coast," and that "Americans must be permitted to heat their homes, fuel their cars, and have peace of mind—free from policies that make energy more expensive and inevitably degrade quality of life," the President directed the Attorney General "to take all appropriate action to stop" measures she "determines to be illegal." *Id.*

3.    The City of Morgan Hill ("Morgan Hill") and the City of Petaluma ("Petaluma") have just such measures on their books. In 2019, Morgan Hill banned natural gas infrastructure in newly constructed buildings. In 2021, Petaluma followed suit. In pursuit of "electrification," these bans deny consumers reliable, resilient, and affordable energy, as well as the use of commonplace gas appliances for cooking, heating, and other household needs. But natural gas is often the lowest cost *and* most efficient energy source for uses like these—outperforming electric on both expense and lifecycle emissions. *See* Dep't of Energy, *Energy Conservation Program for Consumer Products: Representative Average Unit Costs of Energy*, 89 Fed. Reg. 83,672, 83,673 (Oct. 17, 2024).

4.    The natural gas bans not only impose crushing costs on California residents but are also unlawful.  As the Ninth Circuit held just last year, "completely prohibiting the installation of natural gas piping within newly constructed buildings" is "preempted by Congress" in the Energy Policy and Conservation Act.  *California Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1098 (9th Cir. 2024), *amended on denial of reh'g en banc* (citing 42 U.S.C. § 6297(c)).  Under that controlling precedent, Morgan Hill's and Petaluma's natural gas bans are invalid—as numerous other California cities have recognized when recently repealing or suspending their equivalent bans.

5.    The United States brings this declaratory and injunctive action to stop these Cities from enforcing the preempted measures that drive up costs and reduce consumer freedom.

### PARTIES

6.    Plaintiff, the United States of America, enforces federal laws such as the Energy Policy and Conservation Act through its Executive agencies, including the Department of Energy.

7.    Defendant City of Morgan Hill is a municipal corporation organized and existing under and by virtue of the laws of the State of California.

8.    Defendant City of Petaluma is a municipal corporation organized and existing under and by virtue of the laws of the State of California.

### JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

9.    The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

10.   Morgan Hill's and Petaluma's natural gas bans conflict with and are preempted by federal law, and do not satisfy the requirements of any exception to preemption.

11.   There is no set of circumstances under which Morgan Hill's and Petaluma's natural gas ban would be valid under federal law.  The bans' limited exceptions do not save them from preemption.

12.   Morgan Hill's and Petaluma's natural gas bans threaten and harm the United States'

1    sovereign interest in the supremacy and enforcement of federal law, specifically the

2    Energy Policy and Conservation Act.

3    13.    Morgan Hill's and Petaluma's natural gas bans also undermine and conflict with federal

4    energy policy.  For example, the measures (i) prohibit the use of products that the United

5    States Department of Energy regulates and that may be distributed in commerce if in

6    compliance with those federal regulations, thereby disrupting the agency's

7    implementation of the federal statutory scheme, (ii) create a patchwork of inconsistent

8    regulation in an area where Congress imposed a uniform, national energy conservation

9    standards with exceptions permitted only in narrow circumstances, and (iii) harm the

10    United States' interest in protecting Americans' access to reliable, resilient, and affordable

11    energy.  To the extent the natural gas bans apply to new construction undertaken by the

12    Federal Government or its contractors within the cities, they also impose financial harm

13    on the United States and taxpayers by increasing costs.

14    14.    A favorable ruling would redress the United States' harms.

15    15.    The Court has the authority to provide the relief requested under the Supremacy Clause,

16    U.S. Const. art. VI, cl. 2, as well as 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent

17    equitable powers.

18    16.    Venue is proper in this District under 28 U.S.C. § 1391 because Morgan Hill and Petaluma

19    are located within this District and the acts and events giving rise to the claims occurred

20    at least in part in this District.

21    17.    Assignment to either the San Francisco/Oakland or San Jose Division is proper under Civil

22    Local Rule 3-2(c) because a substantial part of the events or omissions that give rise to

23    the claims are located in these Divisions, as Petaluma is in Marin County and Morgan Hill

24    is in Santa Clara County.

25

26

27

**MORGAN HILL'S GAS BAN**

18. In November 2019, the City Council of Morgan Hill "adopted Ordinance 2306 establishing Chapter 15.63 (Prohibition of Natural Gas Infrastructure in New Buildings) requiring all new buildings (residential, commercial, and industrial), after March 1, 2020, to be all-electric." City of Morgan Hill Housing Element 2023-2031, App'x H3, Opportunities for Energy Conservation at H-3-4 (adopted Jan. 25, 2023).[1]

19. A true and correct copy of Ordinance 2306, which took effect March 1, 2020, is attached as Exhibit A. *See* City of Morgan Hill, Ordinance 2306.[2]

20. Ordinance 2306's intent and effect are to ban gas appliances in new buildings.

21. Ordinance 2306 added a new Chapter to Title 15 of the Morgan Hill Code of Ordinances, which states:

    a. Natural gas infrastructure shall be prohibited in newly constructed buildings.

       1. Exception: Natural gas infrastructure may be permitted in a newly constructed building if the applicant establishes that it is not physically feasible to construct the building without natural gas infrastructure. For purposes of this exception, "physically feasible" to construct the building means either an all-electric prescriptive compliance approach is available for the building under the Energy Code or the building is able to achieve the performance compliance standards under the Energy Code using commercially available technology and an approved calculation method.

    b. To the extent that natural gas infrastructure is permitted, it shall be permitted to extend to any system, device, or appliance within a building for which an equivalent all-electric system or design is not available.

---

[1] https://www.morganhill.ca.gov/DocumentCenter/View/43250/H3_MH-HE_Opportunities_for_Energy_Conservation
[2] https://publicrecords.morganhill.ca.gov/WebLink/DocView.aspx?id=439086&dbid=0&repo=CityofMorganHill

c.  Newly constructed buildings shall nonetheless be required at a minimum to have sufficient electric capacity, wiring and conduit to facilitate future full building electrification.

d.  The requirements of this section shall be deemed objective planning standards under Government Code section 65913.4 and objective development standards under Government Code section 65589.5.

Morgan Hill Code of Ordinances Ch. 15.63.040.

22.  Under Ordinance 2306, "'Natural gas infrastructure' shall be defined as fuel gas piping, other than service pipe, in or in connection with a building, structure or within the property lines of premises, extending from the point of delivery at the gas meter as specified in the California Mechanical Code and Plumbing Code." Morgan Hill Code of Ordinances Ch. 15.63.030.E.

23.  Under Ordinance 2306, "'Newly constructed building' shall be defined as a building that has never before been used or occupied for any purpose." Morgan Hill Code of Ordinances Ch. 15.63.030.F.

24.  Ordinance 2306 also includes a "Public interest exemption," which states:

a.  Notwithstanding the requirements of this chapter and the greenhouse gas emissions and other public health and safety hazards associated with natural gas infrastructure, minimally necessary and specifically tailored natural gas infrastructure may be allowed in a newly constructed building provided that the entitling body establishes that the use serves the public interest. In determining whether the construction of natural gas infrastructure is in the public interest, the city may consider:

1.  The availability of alternative technologies or systems that do not use natural gas;

2.  Any other impacts that the decision to allow natural gas infrastructure may have on the health, safety, or welfare of the public.

b.  If the installation of natural gas infrastructure is granted under a public interest exemption, the newly constructed buildings shall nonetheless be required at the

minimum to have sufficient electric capacity, wiring and conduit to facilitate future full building electrification.

Morgan Hill Code of Ordinances Ch. 15.63.050.

25. In December 2023, the City Council voted to reaffirm and keep in place Ordinance 2306. Moore, Michael, *City Council affirms ban on gas in new homes, commercial buildings*, The Morgan Hill Times (Dec. 12, 2023).[3]

26. As a practical matter, Ordinance 2306 functions to ban all use of gas appliances in new buildings not subject to one of the limited exceptions.

27. Ordinance 2306 is and may be enforced by the City, its departments, and employees. *See* Morgan Hill Code of Ordinances Chs. 15.08.090, 15.63.040.

## PETALUMA'S GAS BAN

28. In May 2021, the City Council of Petaluma "adopted an all-electric ordinance … for all Newly Constructed Buildings and Substantial Building Alterations." City of Petaluma *All-Electric Code*.[4]

29. A true and correct copy of that Ordinance 2775, which took effect June 16, 2021, is attached as Exhibit B. *See* City of Petaluma, Ordinance 2775.[5]

30. Ordinance 2775's intent and effect are to ban gas appliances in new buildings and substantial building alterations.

31. Ordinance 2775 added a new Chapter to Title 17 of the Petaluma municipal code, which states:

   a. Newly constructed buildings and substantial building alterations must satisfy the definition of an all-electric building and/or have an all-electric design, except as otherwise provided in this chapter.

---

[3] https://morganhilltimes.com/city-council-affirms-ban-on-gas-in-new-homes-commercial-buildings/
[4] https://cityofpetaluma.org/allelectric/
[5] https://petalumadocs.cityofpetaluma.net/WebLink/DocView.aspx?id=431492&dbid=0&repo=Petaluma&cr=1

        b.  As of the effective date of this chapter, applicants are ineligible to apply for and the building official may not grant permits that would convert an all-electric building to a mixed-fuel building where the application was submitted on or after the effective date of this chapter.

        c.  The requirements of this section are and shall be deemed objective planning standards for purposes of Government Code Section 65913.4 and objective development standards for purposes of Government Code Section 65589.5, as those sections may be amended from time to time.

Petaluma Mun. Code Ch. 17.09.030.

32.    Under Ordinance 2775, an "'All-electric building' is a building that uses a permanent supply of electricity as the source of energy for all space heating, water heating (including pools and spas), cooking appliances, and clothes drying appliances, and has no natural gas or propane plumbing installed in the building." Petaluma Mun. Code Ch. 17.09.020.B.

33.    Under Ordinance 2775, "'All-electric design' means a plan or plans for a building or portion thereof that uses a permanent supply of electricity as the source of energy for all space heating, water heating (including pools and spas), cooking appliances, and clothes drying appliances, and has no natural gas or propane plumbing installed in the building." Petaluma Mun. Code Ch. 17.09.020.C.

34.    Under Ordinance 2775, "'Newly constructed building' shall mean any building that: (1) is proposed to be located in whole or in part within the city; (2) is not an alteration or addition to or repair of an existing building; (3) is subject to the city's regulatory authority pursuant to the city's general plan, Implementing Zoning Ordinance, SmartCode and/or any adopted specific plan or other city land use regulation, regardless of whether a discretionary permit is required or not; and (4) has not been granted and/or is not subject to a valid building permit that remains in effect." Petaluma Mun. Code Ch. 17.09.020.J.

35.    Under Ordinance 2775, "'Substantial building alteration' shall mean an alteration or addition to an existing building involving removal of more than fifty percent of the

perimeter of the exterior walls of the existing building or the addition of more than fifty percent of the gross floor area to the existing building." Petaluma Mun. Code Ch. 17.09.020.K.

36.    Ordinance 2775 also includes a series of "Exceptions," including:

    a.    Additions and alterations to existing buildings, except for substantial building alterations; and

    b.    The use of portable propane appliances outside of the building envelope, such as for outdoor cooking and outdoor heating appliances; and

    c.    Essential services buildings that are electric ready; and

    d.    Back-up power facilities for essential services buildings; and

    e.    Development projects that have obtained vested rights prior to the effective date of this chapter pursuant to a preliminary affordable housing project application in accordance with Government Code Section 65589.5(o), a development agreement in accordance with Government Code Section 65866, a vesting tentative map in accordance with Government Code 66998.1, or pursuant to the ruling in Avco Community Developers Inc. v. South Coast Regional Communication (1976) 17 Cal. 3d 785, or pursuant to other applicable statutory or case law.

Petaluma Mun. Code Ch. 17.09.040.

37.    Ordinance 2775 also includes a discretionary "Infeasibility waiver." Petaluma Mun. Code Ch. 17.09.050.

38.    And Ordinance 2775 includes a section entitled "No appliance or appliance system requirement," which states:

Nothing in this chapter is intended to amend or conflict with and nothing in this chapter shall be construed so as to amend or conflict with any provisions of the National Appliance Energy Conservation Act, and nothing in this chapter is intended to impose and nothing in this chapter shall be construed so as to impose a requirement to use or install any particular appliance or appliance system.

1    Petaluma Mun. Code Ch. 17.09.090.

2  39.    As a practical matter, Ordinance 2775 functions to ban all use of gas appliances in new

3         buildings and substantial building alterations not subject to one of the limited exceptions.

4  40.    Ordinance 2775 is and may be enforced by the City, its departments, and employees. *See*

5         Petaluma Mun. Code Ch. 17.09.060.

6                    **FEDERAL ENERGY POLICY AND CONSERVATION ACT**

7  41.    The Supremacy Clause of the United States Constitution mandates that "[t]his

8         Constitution, and the Laws of the United States which shall be made in Pursuance

9         thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or

10        Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

11 42.    One such law of the United States, which must be given preemptive effect under the

12        Supremacy Clause, is the Energy Policy and Conservation Act (EPCA).

13 43.    Congress passed EPCA to establish a "comprehensive energy policy" addressing "the

14        serious economic and national security problems associated with our nation's continued

15        reliance on foreign energy resources" laid bare by the early 1970s oil crisis. *Air*

16        *Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410

17        F.3d 492, 498 (9th Cir. 2005).

18 44.    In service of its goals to promote both domestic energy supply and energy conservation,

19        Congress began regulating many appliances' energy efficiency and energy use. *See id.*

20 45.    Originally, EPCA permitted more substantial state and local involvement in appliance

21        regulation. *Id.* at 499. But Congress narrowed that authority as it directed increasingly

22        greater federal involvement. Amendments in the 1970s and 1980s eventually mandated

23        federal standards for many appliances and authorized the Department of Energy to issue

24        new or revised standards. *See id.* at 499–500.[6]

25

26 ─────────────────────
   [6] EPCA addresses consumer products and industrial equipment separately. *See* 42 U.S.C.
27 §§ 6291–6309 (consumer); *id.* §§ 6311–6317 (industrial). The provisions are substantially
   similar, and nothing at issue turns on the specific type of product involved. For convenience, this

46.    Products covered by EPCA now may only be "distribute[d] in commerce" if they conform with the applicable federal standard, which requires testing in accordance with standardized, detailed test procedures.  42 U.S.C. § 6302(a)(5); *see id.* §§ 6292, 6293, 6295, 6314; 10 C.F.R. Parts 429–31.

47.    Pursuant to EPCA, there are several covered products fueled by natural gas for which energy conservation standards are in place.  *See, e.g.*, 10 C.F.R. §§ 430.32(d) (residential water heaters), (e) (residential furnaces), (h) (residential clothes dryers), (i) (direct heating equipment), (j) (cooking tops and ovens), (k) (pool heaters), 431.77(a) (gas-fired commercial warm air furnaces), 431.87 (commercial packaged boilers), 431.110 (commercial storage water heaters, instantaneous water heaters, and hot water supply boilers).

48.    To give effect to federal standards, ensure that manufacturers are able to market and sell products that conform with them, preserve product utility, improve energy efficiency and grid resilience, and conserve consumer choice, Congress also broadened EPCA's preemption clause.

49.    As amended, EPCA preempts not only state and local regulations that are stricter than (and therefore would effectively supersede) a federal standard, but more broadly any regulation "concerning the energy efficiency, energy use, or water use of" products subject to a federal standard.  *Id.* § 6297(c).

50.    EPCA defines "energy use" as "the quantity of energy directly consumed by a consumer product at point of use."  *Id.* § 6291(4).

51.    EPCA provides limited exceptions to this general rule of preemption.  One option is that states and localities may ask the Department of Energy to waive this preemption, but Congress strictly cabined this waiver authority both procedurally and substantively, in service of the goals described *supra* ¶ 48.  *See id.* § 6297(c)(2), (d).  For example, EPCA

---

Complaint cites the consumer product provisions.  *Cf. Air Conditioning & Refrigeration Inst.*, 410 F.3d at 496 n.2 (taking a similar approach).

prohibits waiving preemption of state and local measures that are "likely to result in the unavailability . . . of performance characteristics [or] features" in covered products available within a state or locality. *Id.* § 6297(d)(4). So too if the "regulation will significantly burden manufacturing, marketing, distribution, sale, or servicing of the covered product on a national basis." *Id.* § 6297(d)(3).

52. Congress also specified that "regulation[s] or other requirement[s] contained in a State or local building code for new construction concerning the energy efficiency or energy use of [a] covered product" are preempted *unless* they satisfy all of seven enumerated conditions. *Id.* § 6297(f)(3); *see id.* § 6297(c)(3). One of those conditions is that the "code does not require that the covered product have an energy efficiency exceeding the applicable energy conservation standard established in or prescribed under section 6295 of this title." *Id.* § 6297(f)(3)(B).

53. Morgan Hill's and Petaluma's Ordinances "concern the . . . energy use" of products subject to a federal standard. *Id.* § 6297(c). As the Ninth Circuit explained, "a building code that prohibits consumers from using natural gas-powered appliances in newly constructed buildings necessarily regulates the 'quantity of energy directly consumed by [the appliances] at point of use'" and is therefore preempted by EPCA. *California Rest. Ass'n*, 89 F. 4th at 1102 (alteration in original); *see id.* ("EPCA preempts [the municipality's] regulation here because it prohibits the installation of necessary natural gas infrastructure on premises where covered appliances are used."), *id.* at 1103 ("[A] building code that bans the installation of piping that transports natural gas from a utility's meter on the premises to products that operate on such gas 'concerns' the energy use of those products as much as a direct ban on the products themselves.").

54. Numerous other California cities have repealed or suspended their equivalent or similar gas bans in light of the *California Restaurant Association* decision. *E.g.*, City of Los Angeles, Ordinance No. 188,716 (June 24, 2025) (repealing Ordinance No. 187,714);[7]

---

[7] https://cityclerk.lacity.org/onlinedocs/2022/22-0151_Ord_188716_dated_9-3-25.pdf

City of San Luis Obispo, *City of SLO Pauses All-Electric Rule for New Builds* (July 18, 2023);[8] City of Encinitas, Ordinance No. 2023-75 (June 14, 2023) (suspending electrification mandate);[9] City of Santa Cruz, Resolution NS-30,156 (June 13, 2023) (suspending enforcement of Natural Gas Prohibition Ordinance).[10]

55. The City of Morgan Hill has not sought a preemption waiver from the Department of Energy for Ordinance 2306.

56. The City of Petaluma has not sought a preemption waiver from the Department of Energy for Ordinance 2775.

57. Nor do the Ordinances qualify for any other exception to preemption by EPCA, including that for certain qualifying building codes under 42 U.S.C. § 6297(f)(3).

58. EPCA's broad preemption provision therefore bars Morgan Hill's and Petaluma's Ordinances because they prohibit products that are subject to a federal energy conservation standard from using energy.

59. The Ordinances therefore are invalid under the Supremacy Clause.

## CLAIM FOR RELIEF

## COUNT ONE – VIOLATION OF THE SUPREMACY CLAUSE

## (PREEMPTION BY THE ENERGY POLICY AND CONSERVATION ACT)

60. Plaintiff hereby re-alleges the preceding paragraphs of the Complaint as if fully stated herein.

61. Morgan Hill's Ordinance imposing a natural gas ban is preempted in its entirety by EPCA.

62. Petaluma's Ordinance imposing a natural gas ban is preempted in its entirety by EPCA.

63. There is no set of circumstances under which the Ordinances would be valid.

64. The Ordinances concern the energy efficiency and energy use of all gas appliances in newly constructed buildings, including appliances covered by EPCA.

---

[8] https://www.slocity.org/Home/Components/News/News/9883/
[9] https://encinitas.granicus.com/MetaViewer.php?view_id=2&clip_id=3217&meta_id=168521
[10] https://ecm.cityofsantacruz.com/OnBaseAgendaOnline/Meetings/ViewMeeting?id=2123&doctype=2

65. The Ordinances do not fall within EPCA's or any other exceptions to preemption.

66. The Federal Government is harmed and will be harmed by continued enforcement of the Ordinances.

67. Accordingly, Morgan Hill's Ordinance imposing a natural gas ban is and should be declared invalid under the Supremacy Clause and its enforcement should be permanently enjoined.

68. And Petaluma's Ordinance imposing a natural gas ban is and should be declared invalid under the Supremacy Clause and its enforcement should be permanently enjoined.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

a. That this Court enter a judgment declaring that Morgan Hill's and Petaluma's natural gas ban Ordinances are preempted by federal law and do not satisfy any exception to such preemption, and are accordingly void and unenforceable;

b. That this Court enter a judgment permanently enjoining Defendants from enforcing or attempting to enforce Morgan Hill's and Petaluma's natural gas ban Ordinances because they are preempted by federal law and do not satisfy any exception to such preemption, and are accordingly void and unenforceable;

c. That this Court award the United States its costs and fees in this action; and

d. That this Court award any other relief it deems just and proper.

DATED: January 5, 2026

Respectfully submitted,

*/s/ Charles E.T. Roberts*
CHARLES E.T. ROBERTS
Counsel to the Assistant Attorney General
U.S. Department of Justice
Civil Division

*Counsel for the United States*